J-A01011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRON DIXON TILDON | : | |
| | : | |
| Appellant | : | No. 1126 EDA 2021 |

Appeal from the PCRA Order Entered May 11, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008638-2012

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED NOVEMBER 7, 2023**

Tyron Dixon Tildon (Appellant) appeals from the order entered on May 11, 2021, in the Philadelphia County Court of Common Pleas, dismissing his timely petition for collateral relief filed under the Post Conviction Relief Act (PCRA).[1] Appellant seeks relief from an aggregate sentence of life imprisonment, imposed on August 5, 2013, after a jury found him guilty of first-degree murder, carrying a firearm without a license, and recklessly endangering another person (REAP).[2] On appeal, Appellant raises a myriad of ineffective assistance of counsel claims. Based on the following, we affirm on the basis of the PCRA court opinion.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), and 2705, respectively.

The PCRA court summarized the underlying facts as follows:

On the evening of October 6, 2006, Denise Chandler drove to the intersection of N. Cleveland Street and W. Cumberland Street, intending to purchase a bag of heroin from Mark Jordan. Chandler arrived at the intersection and found Jordan standing outside of a bar. Chandler drove to Jordan, asked if he was carrying heroin, and invited him to the car. Once Jordan entered the car, Chandler parked on the corner of Cleveland and Cumberland Streets.

As Chandler gave Jordan money for the drugs, gunshots rang out. Chandler attempted to pull out from her parking spot, but Appellant crossed in front of her car on foot with a black revolver in his hand, forcing Chandler to wait until he entered the car in front of her. Jordan looked down Cleveland Street and saw "a lot of people running, but [Appellant] was the only one coming down Cleveland. They [were] all running away from where Bilal[3] was. He ran right past the car and he looked right at me when I was in the car."

After . . . Appellant stepped into that car, Chandler forced her way [in] the front of Appellant, honking her horn and speeding out of her parking spot onto York Street. Suddenly, Jordan exclaimed "Stop, stop, that's my boy." Chandler stopped the car; Donnell Goulbourne ran up to Chandler's car yelling, "Let me get in, let me get in, they shootin!" Chandler let Goulbourne into her car. Upon entering, Goulbourne said, "I been hit [sic]." "He was asking how long to the hospital and he was saying he was short of breath and that he was going to die. He kept saying that. I didn't know he was shot until he said Bilal shot him when he was chasing us in the car."

Goulbourne then suddenly exclaimed, "There he is!" Chandler turned towards the driver's side window, through which she saw . . . Appellant point a gun in her direction from his position inside of the car. Goulbourne exclaimed, "Pull out, that's who shot me." Chandler sped off; a car chase ensued, during which Chandler ran at least two red lights and nearly collided with a van. Prior to getting to the hospital, Chandler spotted two police cars

---

3 "Bilal" was a nickname for Appellant.

and pulled up to them. Jordan exited the car and helped to move Goulbourne into the back of one of the police cars. Goulbourne was taken to Temple [U]niversity Hospital, where he was pronounced dead at 11:40 p.m.

Five days after the shooting, Appellant traveled to the Middle East, where he remained for five and one-half years. Appellant was arrested in Amman, Jordan and brought back to the United States by United States Marshals on April 29, 2012.

PCRA Ct. Op., 7/5/22, at 1-2 (record citations & footnote omitted).

Appellant was charged with first-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, possession of an instrument of crime,[4] and REAP. The matter proceeded to a jury trial in the summer of 2013. Appellant's trial counsel was Lawrence S. Krasner, Esquire (Trial Counsel).[5] On August 5, 2013, the jury convicted Appellant of murder, carrying an unlicensed firearm, and REAP.[6] After the verdict was read, Appellant's counsel made an oral motion for judgment of acquittal regarding the carrying an unlicensed firearm charge, which the trial court granted. *See* N.T., 8/5/23, 64-65. That same day, the court sentenced Appellant as follows: (1) a term of life imprisonment without the possibility of parole for the murder conviction; and (2) a concurrent term of nine to 24

_____

[4] *See* 18 Pa.C.S. §§ 6108 and 907(a).

[5] Krasner is currently the District Attorney of the City of Philadelphia.

[6] The remaining charges were *nolle prossed*.

- 3 -

months' incarceration for the REAP conviction. Appellant filed a post-sentence motion, which was denied on December 3, 2013.

Appellant then filed a direct appeal. A panel of this Court affirmed his judgment on sentence on June 16, 2015, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on December 31, 2015. **See Commonwealth v. Tildon**, 3438 EDA 2013 (unpub. memo.) (Pa. Super. June 16, 2015), *appeal denied*, 443 EAL 2015 (Pa. Dec. 31, 2015).

On May 17, 2016, Appellant filed a timely, *pro se* PCRA petition. Thereafter, new counsel, the Defender Association of Philadelphia, entered its appearance. On February 8, 2019, Appellant filed a counseled, amended PCRA petition, raising, *inter alia*, ineffective assistance of counsel claims in terms of **Batson**,[7] **Brady**,[8] prosecutorial misconduct, defective jury instructions,

---

[7] **Batson v. Kentucky**, 476 U.S. 79, 85 (1986) (holding the exclusion of jurors based on race is a violation of the equal protection clause of the United States Constitution).

[8] **Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

***Ross***[9]/speedy trial, and ***Kloiber***[10] instruction challenges. The Commonwealth filed a motion to dismiss Appellant's amended PCRA petition on June 21, 2019.[11]

The PCRA court heard argument on March 3, 2020, but did not provide a decision at the conclusion of the proceeding. Subsequently, on February 16, 2021, the court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition as meritless.

On March 3, 2021, Appellant filed a witness certification in support of his amended PCRA petition, which identified Trial Counsel, and indicated he would proffer the following testimony regarding his defense of Appellant:

> Specifically[,] if [the PCRA court held] a hearing[, Trial Counsel] will testify . . . that his theory of defense at trial was both

---

[9] ***Ross v. United States***, 349 F.2d 210, 215 (D.C. Cir. 1965) (holding that in determining whether the Commonwealth has unreasonably delayed the arrest of a suspect after a criminal event, the court must weigh the reasonableness of the delay against the prejudice to the defendant). ***See also*** Pa.R.Crim.P. 600; ***Barker v. Wingo***, 407 U.S. 514 (1972) (holding whether a delay violated a defendant's right to a speedy trial requires a four-part constitutional analysis); ***Commonwealth v. Martz***, 232 A.3d 801, 812 (Pa. Super. 2020).

[10] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954). "A ***Kloiber*** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have the opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." ***Commonwealth v. Williams***, 255 A.3d 565, 577 n.15 (Pa. Super. 2021) (citation omitted).

[11] During this time, the case was reassigned to the Honorable Tracy Brandeis-Roman, following the retirement of the trial judge, the Honorable Teresa M. Sarmina.

sufficiency of the evidence and self-defense and that he requested a jury instruction on self-defense. He will also testify that he reviewed two documents that PCRA counsel provided him that show that prior to trial the Commonwealth had conducted an investigation that revealed that "[Appellant] shot the victim[ ] because the victim was selling drugs in [his] area" and also concluded that the "shooting was prompted over drug territory[. . . .]" Trial Counsel] will also testify that he has no recollection of receiving these documents any time during his representation of [Appellant] and that these documents support his theory of self-defense. [Trial Counsel] will also testify that he was not made aware that Police Officer [Andre] Daniels was unavailable to testify because he had been fired from the police force due to his guilty plea in federal court for numerous counts of prescription drug fraud.

Appellant's Certification of Witnesses in Support of Amended Petition for Writ of Habeas Corpus and for Collateral Relief from Criminal Conviction Pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq., 3/3/21, at 1-2 (unpaginated). The Commonwealth filed a response to Appellant's witness certification on April 7, 2021. Thereafter, on May 11, 2021, the PCRA court dismissed Appellant's petition as meritless. This timely appeal followed.[12]

Appellant raises eight issues on appeal:

1. Did the PCRA court err in dismissing the claim that [A]ppellate [C]ounsel were ineffective in failing to raise on appeal the issue that the Commonwealth used its peremptory strikes in a discriminatory manner to strike African Americans on the jury panel, in violation of [Appellant]'s rights to equal protection, due process of law, and a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution?

_____

[12] Following an extension of time, Appellant complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

2. Did the PCRA court err in dismissing the claim that the Commonwealth violated **Brady v. Maryland** when it suppressed material evidence favorable to the defense in violation of [Appellant]'s due process rights; specifically, the Commonwealth suppressed the records of its investigation into the decedent's involvement in the drug trade, as well as the fact that Officer Andre Daniels had been fired by the police department and was convicted in federal court on drug and fraud offenses, and that [T]rial [C]ounsel was ineffective in stipulating to Officer Daniels' testimony?

3. Did the PCRA court err in dismissing the claim that the prosecution mischaracterized the evidence in this case and misled the jury by stating that [Appellant] had not given a statement to authorities, and argued consciousness of guilt based upon that false claim, when [Appellant] had in fact given a statement to authorities, and that [T]rial [C]ounsel was ineffective for failing to object to this prosecutorial misconduct and for failing to introduce the statement to rebut the prosecutor's misleading argument?

4. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to object to the trial court's defective instructions on burden of proof, in that by instructing the jury that their determination of whether the Commonwealth has satisfied its burden of proof should be based solely on the Commonwealth's evidence, and failing to allow or compel consideration of evidence presented by the defense, the instruction violated [Appellant]'s constitutional rights to present a defense, to testify in his own behalf, and to due process?

5. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to litigate a motion to dismiss the charges due to excessive pre-arrest delay or a violation of the right to a speedy trial, as the delay of more than six years between [Appellant]'s trial and the swearing out of the complaint violated the Sixth Amendment right to a speedy trial and the Fifth and Fourteenth Amendment rights to due process of law?

6. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to move for judgment of acquittal at the close of the Commonwealth's case where the Commonwealth's evidence did not make out the violation of the Uniform Firearms Act [(the carrying a firearm without a license charge)]?

7. Did the PCRA court err in dismissing the claim that the trial court erred by refusing to give a "*Kloiber* charge" that the witness' identifications should be viewed with caution as to witness Mark Jordan and giving a modified version as to Denise Chandler, and that prior counsel was ineffective for failing to preserve the claim and litigate it on appeal?

8. Did the PCRA court err in dismissing the claim that [Appellant] is entitled to relief from his conviction and sentence because of the cumulative effect of [all] of the errors described in the PCRA petition?

Appellant's Brief at 5-7.

Our standard regarding PCRA appeals is well-settled:

When reviewing the denial of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, a reviewing court is bound by a PCRA court's credibility determinations and its fact-finding, so long as those conclusions are supported by the record. However, with regard to a court's legal conclusions, appellate courts apply a *de novo* standard.

*Commonwealth v. Drummond*, 285 A.3d 625, 633 (Pa. 2022) (footnotes & quotation marks omitted).

Because Appellant's claims concern ineffective assistance of counsel, we also are guided by the following:

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court has recast the two-part *Strickland* standard into a three-part test by dividing the performance element into two distinct components. To prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a

- 8 -

reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To satisfy the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must adduce sufficient evidence to overcome this presumption.

**Drummond**, 285 A.3d at 634 (footnotes & quotation marks omitted). We further note: "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." **Commonwealth v. McGarry**, 172 A.3d 60, 70 (Pa. Super. 2017) (citation omitted).

After a thorough review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the PCRA court, we conclude there is no merit to Appellant's issues, and we affirm on the basis of the court's opinion. **See** PCRA Ct. Op. at 6-32 (finding there was no merit to any of the alleged errors and an evidentiary hearing was not warranted based on the following: (1) Appellant's claim of ineffectiveness regarding a **Batson** challenge was unavailing because (a) Trial Counsel did raise several **Batson** challenges, which the trial court denied relief based on race neutral reasons, including a juror whose brother had been convicted of third-degree homicide and another juror who felt her brother's defense attorney failed to help him by advising him to take a plea agreement;[13] and (b) every reason provided to the trial

_____

[13] PCRA Ct. Op. at 11.

court as to why a certain juror was struck was supported by the record and valid where "[t]hese jurors all had circumstances that would lead a reasonable person to believe that they would not have been likely to make a fair determination at Appellant's trial[;]"[14] (2) Appellant's ineffective assistance of counsel assertion regarding the Commonwealth's purported withholding of certain information concerning police investigator, Officer Daniels, and other exculpatory evidence was without merit because Appellant failed to prove that any of the alleged evidence would qualify as *Brady* material where (a) a stipulated statement was admitted into evidence that included statements from the police paperwork of Officer Daniels and another unavailable officer in which both officers indicated that at the time of the shooting, a witness stated that a vehicle approached and an extended arm shot into another car

---

[14] *See* PCRA Ct. Op. at 12. In reviewing this claim, the PCRA court observed that Appellant did not address Trial Counsel's purported ineffectiveness as to a *Batson* claim in his petition — instead, he focused his allegation that appellate counsel was ineffective — and therefore, the court found this omission was fatal to his argument because he waived his underlying *Batson* claim and any derivative claim of ineffectiveness necessarily fails. *Id.* at 8. The PCRA court acknowledged that Appellant briefly mentioned Trial Counsel's ineffectiveness in terms of a *Batson* claim in his reply brief but pointed out that "[a] claim is waived if it is raised for the first time in a reply brief." *See id.* at 8, *citing **Commonwealth v. Wharton**, 811 A.2d 978, 990 (Pa. 2002). We find this conclusion is erroneous as the cited case was referencing an appellate reply brief. *See id.* at 990; *see also **Commonwealth v. Basemore**, 744 A.2d 717, 726-27 (Pa. 2000) ("A reply brief, however, is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief."). Nevertheless, because the PCRA court addressed the merits of the claim, this error is harmless.

containing the victim but the witness could not identify the shooter,[15] (b) evidence of Officer Daniels' federal indictment and subsequent plea were public records and therefore, the defense would have been put on notice that he was not going to testify, it was debatable if the evidence could have been used as impeachment evidence because it was not clear that this was prosecutorial evidence since Appellant wanted the stipulated statement read to the jury, and his claim that the outcome of the trial would have been different was questionable since the relief he is now seeking would have precluded evidence favorable to his defense at trial, (c) evidence of a broader police investigation into a drug turf war would have gone against Appellant's own trial strategy since he previously attempted to preclude this same kind evidence "along with speculation that the testing of [the victim's] clothing was motivated by a theory that [the victim] too had fired a weapon[;]"[16] (3) with respect to Appellant's claim that Trial Counsel was ineffective for failing to object to purported prosecutorial misconduct during closing arguments, the underlying issue was previously litigated on direct appeal[17] and therefore,

---

[15] The only difference between Officer Daniels' and the officer's statements was that Officer Daniels described the vehicle as a silver car while the other officer said it was a gray Honda.

[16] PCRA Ct. Op. at 16.

[17] The panel concluded the trial court did not err in denying relief where the Commonwealth's comments were in "fair response" to Trial Counsel's reference to the absence of any statement from Appellant, and any resulting

*(Footnote Continued Next Page)*

Appellant failed to establish counsel was ineffective since counsel did object to the statement and appealed the issue; (4) Appellant's issue that Trial Counsel was ineffective for failing to object to an allegedly flawed jury instruction was meritless where the court utilized the relevant model jury instruction and may have omitted the word, "Commonwealth," prior to the word, "evidence," but still stated that it was the Commonwealth's burden to prove each element of the crimes at issue which did not materially change the burden of proof requirement, and allowed the jury to consider evidence that benefitted Appellant (including Appellant's evidence that he did not flee to Yemen to avoid prosecution but rather to learn about his faith); (5) Appellant's claim that Trial Counsel was ineffective for failing to litigate a *Ross*/speedy trial motion was unavailing because pursuant to *Commonwealth v. DeBlase*, 665 A.2d 427 (Pa. 1995),[18] he was required to present Rule 600 analysis but failed to do so (most likely because he fled to a foreign country for more than five years), and therefore, the court could not proceed to the next step in the two-step *Barker* balancing test; (6) Appellant's issue that Trial Counsel was ineffective for failing to file a motion for judgment of

_____

prejudice was negated by the court's curative instructions. *See Dixon-Tildon*, 3438 EDA 2013 (unpub. memo. at 4-9).

[18] *DeBlase* discussed Rule 600's predecessor, Pennsylvania Rule of Criminal Procedure 1100. *See* Pa.R.Crim.P 1100 (superseded). Effective April 1, 2001, Pa.R.Crim.P. 1100 was renumbered as Rule 600.

acquittal for the carrying a firearm without a license charge prior to the conclusion of trial was meritless where (a) the claim lacked arguable merit because the law does not support the notion that there was insufficient evidence, considering the victim's cause of death, (b) there was a reasonable basis for Trial Counsel's action or inaction because if counsel had moved for an acquittal, "the Commonwealth would have likely asked to reopen the case to present evidence of the [gun's] barrel length"[19] and counsel would not want the jury to hear more testimony about the murder weapon, and (c) Appellant did not suffer any prejudice where the carrying an unlicensed firearm charge was subsequently dismissed and the crux of the case was the identity of the shooter, so the length of the barrel would not have affected the conviction; (7) Appellant's claim that Trial Counsel was ineffective for not requesting a **Kloiber** charge regarding one witness, Jordan, and for not objecting to the charge being modified with respect to another witness, Chandler, was meritless as counsel did request **Kloiber** charges regarding both witnesses and the trial court rejected one request based upon the view that it did not apply to Jordan since he did not make an in-court identification of Appellant and permitted a modified **Kloiber** charge as to Chandler, which included certain adjustments requested by Appellant; and (8) Appellant failed to meet his burden of proving that more than one error occurred and therefore, he

---

[19] **See** PCRA Ct. Op. at 29.

cannot establish he was prejudiced due to cumulative errors.).  Accordingly, we do not disturb the PCRA court's determinations as Appellant's arguments are unavailing.

We direct that a copy of the PCRA court's July 5, 2022, opinion be filed along with this memorandum and attached to any future filings of the memorandum in this case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2023